UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-63012-AHS

RYAN TURIZO,

    Plaintiff,

v.

GS BAYVIEW, LLC d/b/a AVANA BAYVIEW,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant GS BAYVIEW, LLC d/b/a AVANA BAYVIEW, by and through its undersigned counsel, hereby files this motion pursuant to FRCP Rule 12(b)(6). Defendant seeks dismissal of Plaintiff's Complaint in full, as the Complaint (Docket #1) fails to state a claim upon which relief can be granted as a matter of law or fact.

**I.**     <u>**Standard for Grant of a Rule 12(b)(6) Motion**</u>

A complaint is properly dismissed upon a 12(b)(6) motion "on the basis of a dispositive issue of law." *Nietzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827 (1989). Dismissal pursuant to a 12(b)(6) motion is also warranted if it does not contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Boyd v. Warden,* 856 F.3d 853, 863 (11th Cir. 2017), *quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1948 (2009). Any inference of a "mere possibility of misconduct" is insufficient for the Plaintiff

to prevail on a 12(b)(6) motion. *Iqbal,* 556 U.S at 678, 129 S.Ct. 1948. Factual allegations in the complaint must "be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). Elevation of the claim from the merely speculative to the requisite facial plausibility to withstand a 12(b)(6) motion will occur only when the Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Inclusive Communities Project, Incorporated v. Lincoln Property Company,* 920 F.3d 890, 899 (5th Cir. 2019).

The Court must view the factual allegations in the Complaint "as true and … in a light most favorable to the plaintiff." *Boyd* at 863-64. However, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932 (1986); *see also, Iqbal* at 678. A "'naked assertion' devoid of 'further factual enhancement'" will not allow a complaint to survive a 12(b)(6) motion. *Iqbal* at 678, *quoting Twombly,* at 557. With regard to Plaintiff's Complaint, both the lack of relevant factual content and also the "naked assertions" of legal conclusions render the action fatally flawed and plainly subject to dismissal under this motion.

II. **Plaintiff Claims Unlawful Discrimination Under the Fair Housing Act From a Single Question to the Community Regarding the Effect of His Criminal History.**

Plaintiff's Complaint alleges violation by Defendant of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* Specifically, Plaintiff, who describes himself as a "tester" seeking only to "enforce fair housing laws," contends he contacted a rental apartment community in Pompano Beach, Florida owned by Defendant known as Avana Bayview (the "Community"). Complaint ¶¶ 4, 7. Plaintiff alleges that he inquired about the application procedures at the Community, and

was told by Defendant's agent that the Community would automatically deny any applicant seeking to rent housing at the community who has a "felony criminal record."[1]  Complaint ¶ 8.

Plaintiff admits that he himself has a "felony criminal record" but specifically denies he was actually looking for rental housing when he inquired at the Community.  Nonetheless, Plaintiff alleges just being verbally told on one occasion when he inquired that his housing application would be "automatically denied" because of his criminal record constitutes unlawful intentional discrimination under the Fair Housing Act.  Plaintiff contends this alleged discrimination resulted in damage to him in the form of discouragement, restriction of housing choice, deprivation of housing opportunity, and various emotional and psychic injuries from the asserted intentional discrimination.  Complaint ¶¶ 8, 27.

Plaintiff also contends that Defendant's alleged policy of automatic denial of "any prospective individual with a felony criminal record perpetuates segregated housing patterns and discourages and/or obstructs choices in the applicable community, neighborhood, and/or development," depriving *Plaintiff* of housing opportunities he denies he was seeking.  Complaint ¶ 11.  Plaintiff alleges that Defendant's "policy regarding the criminal history of applicants seeking to rent, utilize, or otherwise occupy" the Community "is unlawful under the Fair Housing Act, as it has a disparate impact on individuals of Hispanic/Latino heritage and/or descent."  Complaint ¶14.  In short, Plaintiff alleges the existence and application of a facially neutral policy banning any housing applicant with a criminal history from the Community, and summarily concludes the "policy" is "unlawful" because of a disparate impact on a group

---

[1] Defendant disputes Plaintiff's characterization his interaction with the Community as described in the Complaint.  *See* n. 4, *below*. Because of Plaintiff's failure to state a prima facie case of unlawful discrimination under the Act, however, a dispute over the particulars of the scope of that interaction are immaterial to this motion.

DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS
CASE NO. 0:19-CV-63012-AHS

- 3 -

characteristic protected by the federal Fair Housing Act. For all the reasons below, Plaintiff's claims are unsupported by factual allegations, and constitute mere "naked conclusions" of law insufficient to sustain the Complaint against this challenge by motion.

### III. A Prima Facie Case of Discrimination under the Fair Housing Act Requires Some Showing of Both Fact and Causation

Plaintiff's claims of both discriminatory intent and discriminatory effect under the Fair Housing Act are combined into a single cause of action under the Fair Housing Act. *See* Complaint, Count I – "Violation of the Fair Housing Act." Because the two theories of discrimination have different elements for the successful assertion of a valid prima facie case, Defendant has separated them for analysis under this motion.

#### A. Plaintiff's Complaint does not allege unlawful intentional discrimination based on any class or characteristic protected by the Fair Housing Act.

The Fair Housing Act makes it unlawful for any housing provider to "refuse to negotiate for the … rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."[2] 42 U.S.C. §3604(a)(1). Plaintiff's allegation of intentional unlawful discrimination is based on his claim to have been told by the Community on one occasion that his housing application would be denied because of his criminal record.

A prima facie claim of "disparate treatment" or "discriminatory intent" under the Fair Housing Act can be established "by showing that animus against the protected group was a

---

[2] Discrimination in housing rental or sales "or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of" disability, are also prohibited by the Act. 42 U.S.C. §3604(f)(1).

significant factor in the position taken by the …decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Fortune Society v. Sandcastle Towers Housing Development Fund Corp.,* 388 F.Supp.3d 145, 177 (E.D. N.Y. 2019), *quoting Mhany Mgmt. Inc. v. City of Nassau,* 819 F.3d 581, 600, 606 (2d Cir. 2016). In the Complaint, Plaintiff does not state any facts supporting a conclusion that the result of his one encounter with the Community's agent was motivated by anything other than the criminal record he disclosed to the agent. Plaintiff does allege, however, that Defendant has violated the Fair Housing Act by "making unavailable and/or otherwise denying the Dwelling to Plaintiff on the basis [*sic*] of race and/or criminal record." [3] Complaint ¶26.

Significantly, "criminal record" is not a characteristic or class of persons protected by the Fair Housing Act. *Evans v. UDR, Inc.,* 614 F.Supp.2d 675, 691 (E.D. N.C. 2009) ("the FHA clearly does not prohibit landlords from denying a person occupancy on the basis of his criminal record"). Absent evidence that consideration of a criminal record is used as a "pretext" for unlawful discrimination, no discriminatory "purpose" in violation of the Act is shown. Facts supporting a claim of pretext might be, for instance, allegations that a particular screening criterion is applied only to some applicants and not to others, or not as a usual and customary practice, and that the deviation from usual practice correlates to a protected characteristic. *See, e.g., United States v. Collier,* 2010 WL 3881381 at *10 (W.D. La. Sept. 28, 2019).

---

[3] Plaintiff's allegation of discrimination on the basis of "Hispanic / Latino heritage and / or descent" would appear to be a claim of discrimination on the basis of national origin, rather than race as alleged in the Complaint. In the event Plaintiff's Complaint survives this motion to dismiss, Defendant will seek a "more definite statement" as to the basis of the discrimination alleged. FRCP 12(e).

The only alleged discriminatory act on the part of Defendant is a single interaction with Defendant's agent.  The Complaint includes no facts alleging that housing applicants not of "Hispanic / Latino heritage or descent" or of a certain race are not subject to the same criminal history screening criteria to which he was.  The Complaint also includes no facts alleging that any applicants from outside the claimed protected class are not "automatically denied" for any felony criminal conviction.  Absent the allegation of any facially plausible facts that application of criminal history screening is a mere pretext for discrimination because of a protected characteristic, Plaintiff has not stated even a prima facie case of discriminatory treatment under the Fair Housing Act.  No reasonable finder of fact could credibly conclude that Defendant's alleged response to Plaintiff's inquiry was motivated by anything other than Plaintiff's record of criminal conviction.  Plaintiff's claim of unlawful intentional discrimination (or unlawful disparate treatment) under the Fair Housing Act must be dismissed under Rule 12(b)(6) as matters of both law and fact.

> **B.** **Plaintiff's complaint does not establish a *prima facie* claim for unlawful disparate impact (or unlawful discriminatory effects) under the Fair Housing Act.**

Alternatively, a facially neutral practice or policy can be challenged under the Fair Housing Act as having an unlawful "disparate impact," because it "has a segregative effect or that it makes housing options significantly more restrictive for members of a protected group than for persons outside that group." *Hallmark Developers, Inc. v. Fulton Cty., Ga.,* 466 F.3d 1276, 1286 (11th Cir. 2006).  The brief 33 paragraph Complaint explicitly concludes without factual basis that Defendant's "policy" is "unlawful" under the Fair Housing Act because "it has a disparate impact on individuals of Hispanic / Latino heritage and/or descent" in at least six

paragraphs. *See e.g.,* Complaint ¶¶ 9, 14, 16, 17, 18, 25. Plaintiff's conclusions of the existence, operation, and application of an alleged "policy" that is "unlawful" and has a "disparate impact" on a protected class are wholly unsupported by any facts.

In 2015, the Supreme Court held that disparate impact claims ("claims asserting an unjustified, disproportionally adverse effect on minorities") are cognizable under the Act. *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* -- U.S. --, 135 S.Ct. 2507 (2015) (*"Inclusive Communities"*). The Supreme Court recognized that since the Act makes it unlawful to "otherwise make unavailable or deny" housing because of a protected class, disparate impact claims that focus on the "results" of a housing practice must be included as part of the Fair Housing Act's "central purpose … [of] eradicat[ing] discriminatory practices" in the United States. *Id.* at 2521. But the Court also recognized that a disparate impact claim of discrimination could pose a danger of "displac[ing] valid governmental and private priorities" with a solely race-based decision, such as the adoption of "numerical quotas." *Id.* at 2522-24. To safeguard against that danger, the Supreme Court in *Inclusive Communities* made clear that "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a *defendant's* policy or policies causing that disparity." *Id.* This mandate to show both a policy *and* a "*robust causality* ... ensures that '[r]acial imbalance … does not, without more, establish a prima facie case of disparate impact." *Id.*

Even before the Supreme Court's decision in *Inclusive Communities,* however, the Eleventh Circuit had already held that at least some "relevant statistical showing" is the minimum required to support a disparate impact claim of discrimination under the Fair Housing Act. In *Schwarz v. City of Treasure Island,* 544 F.3d 1201 (11th Cir. 2008), an operator of halfway houses for recovering alcoholics (considered "disabled" under the Act) alleged that a

city's zoning ordinance had a disparate impact on the protected class of people with disabilities. The operator's claim failed and was dismissed, however, because he provided no comparative data to support a prima facie case of disparate impact. The *Schwarz* plaintiff failed to provide "an adequate statistical foundation for a disparate impact claim because he presented no comparative data at all," relying instead on a "bald assumption" that the ordinance's effect on the halfway houses would have a disparate impact on recovering alcoholics. *Id.* at 1217-18.

Under *Inclusive Communities,* therefore, a prima facie case of disparate impact discrimination will fail unless it demonstrates *both* relevant statistical disparity (evidence comparing members of the protected class affected by the challenged policy with non-members affected by the challenged policy), *and also* a plausible showing of "robust causality" between the challenged policy and that statistical disparity. *Inclusive Communities* at 2522-2523. Succinctly, a "plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.; see also Oviedo Town Center II, L.L.L.P. v. City of Oviedo, Florida,* 759 Fed.Appx. 828 (11th Cir. 2018) (granting defendants' 12(b)(6) motion to dismiss complaint alleging disparate impact discrimination under the Fair Housing Act).

> [1] Plaintiff blithely concludes without any factual support in his Complaint that[1] Defendant's criminal history policy and/or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law;
>
> [2] there is a robust causal link between the challenged policy aor practice and a disparate impact on Hispanic / Latino people that shows the specific practice is the direct cause of the discriminatory effect;
>
> [3] the disparity caused by the policy and/or practice is significant; and
>
> [4] there is a direct link between the disparate impact and Plaintiff's injury.

Complaint ¶25.

As fully set forth below, the Complaint fails to provide factual support for the existence of any allegedly facially neutral policy with unlawful discriminatory effects, fails to provide any factual support for any racial disparity in housing applications, and also fails to prove any "robust causality" between an alleged policy and an alleged statistical racial disparity. Defendant's motion to dismiss must be granted.

> i.  *The Complaint does not state the existence of any facially neutral policy with allegedly discriminatory effects.*

Plaintiff's only factual allegation of the existence of facial neutral policy with a racially discriminatory effect is a single paragraph of the Complaint:

> As part of Plaintiff's investigation into potential discrimination in the housing market, Plaintiff inquired about Defendant's policy regarding the criminal record of applicants applying to rent the Dwelling. Defendant responded by stating that any felony criminal record would result in an automatic denial of an applicant seeking to rent the Dwelling. Plaintiff has a felony criminal record.[4]

Complaint ¶8. Plaintiff apparently supposes that a description of a single encounter with a single agent of Defendant is sufficient to preliminarily establish the existence of a customarily applied policy. Plaintiff is incorrect. A "threshold" foundation for a claim of disparate impact is factual support for the proposition as to whether a "policy" allegedly causing the discriminatory effect even exists. *See Fortune Society,* 388 F.Supp.3d at 173 (denying summary judgment to plaintiff

---

[4] In fact, Defendant disputes the allegation that Plaintiff asked about the effects of felony convictions on the general application process as a whole. Rather, in the event Plaintiff's complaint survives this motion, Defendant will show that in his single "test" of the Community (as well as in his many other identical "tests" in the state of Florida), Plaintiff specifically asked about the effect of *his own* felony conviction on *his* application. Since Plaintiff's factual allegations must be taken as true at this stage, this dispute of fact is immaterial for this motion.

on disparate impact claim for alleged criminal history ban because "plaintiff cannot meet its burden without [an] initial showing that a ban exists").

Other than the allegation of a one-time decision stated during Plaintiff's verbal exchange with Defendant's agent[5], the Complaint is devoid of any factual allegations of the existence of a challenged "policy." While a single encounter might be factually sufficient for a case of intentional discrimination (or disparate treatment) to survive a motion to dismiss, a single encounter does not a "policy" make. *Inclusive Communities,* 135 S.Ct. at 2523 (a disparate impact plaintiff "will not easily be able to show … a policy causing a disparate impact because … a one-time decision may not be a policy at all."). As Plaintiff's Complaint fails to meet even the prima facie element of a disparate impact case (identifying an operative policy allegedly causing a discriminatory effect), the Complaint must be dismissed.

> ***ii.     Disparate impact discrimination theory requires statistical evidence of racial disparity and a causal connection between that disparity and the challenged policy to make out a prima facie claim of violation of the Fair Housing Act.***

As in the failed claim of disparate impact discrimination in *Schwarz,* Plaintiff here has provided "no comparative data at all" to show that any particular class of people protected by the Act are disproportionately impacted by the challenged alleged "policy" of criminal history screening. *Schwarz,* 544 F.3d at 1217-18. Like the *Schwarz* plaintiff, Plaintiff here makes nothing but a "bald assumption" that the challenged policy is "unlawful," and "has a disparate

---

[5] As noted above, Plaintiff's allegations regarding that single encounter cannot reasonably lead to a conclusion of unlawful discriminatory intent on the basis of anything other than the unprotected class of prior criminal offenders.

impact on individuals of Hispanic/Latino heritage and/or descent." Complaint at ¶25. Plaintiff not only neglects "to allege facts at the pleading stage or produce statistical evidence" in support of this "naked conclusion" of disparate impact, he has also utterly failed to provide any evidence of the "robust causality" between the challenged policy and the disparate impact claimed. *Oviedo Town Center II* 759 Fed. Appx. at 835 (upholding trial court's finding of lack of prima facie case of disparate impact).

Plaintiff's attempts to meet the Supreme Court's *Inclusive Communities* prima facie standard for a claim of disparate impact rest solely on his vague reference to "recent data, studies and HUD findings" that "Hispanic / Latino people are arrested, convicted, and imprisoned at vastly disproportionate rates in Florida and the country as a whole." Complaint ¶13. The Complaint appears to ascribe the alleged "recent data, studies and HUD findings" regarding disproportionate representation of "Hispanic / Latino" people being "arrested, convicted, and imprisoned" to a 2016 HUD "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions".[6] As a "guidance" document, this memorandum only expresses HUD's enforcement policies for those allegations of disparate impact discrimination it investigates or prosecutes. Plaintiff's general conclusory allegation of unlawful disparate impact from criminal history screening are based solely on quotations of hearsay policy statements from HUD's guidance document, are not factually specific to the challenged alleged "policy" at issue in the Complaint, and are inaccurately and misleadingly excerpted by Plaintiff. Specifically, the Complaint alleges that

---

[6] The 2016 HUD General Counsel guidance document referenced by Plaintiff's Complaint can be found here.

> The U.S. Department of Housing and Urban Development ("HUD") has found that "where a policy or practice that restricts access to housing on the basis of criminal background *has a disparate impact on individuals of a particular race* … such policy or practice is unlawful under the Fair Housing Act if it is not necessary to serve a substantial, legitimate, nondiscriminatory interest of the housing provider."

Complaint ¶12.  This "finding" of HUD is predicated on the assumptions that the application of a particular "policy" is established and that a statistical racial disparity is established.  The instant Complaint does neither, and Plaintiff's reliance on the HUD guidance for factual evidence of his allegations is misplaced and insufficient as matters of fact and law.

Perhaps more significantly, HUD's policy position on disparate impact has changed since the 2016 guidance document.  Specifically, in a 2019 final rule on the "Fair Housing Act's Discriminatory Effects Standard," HUD newly adopted the formula for establishment of a prima facie case of disparate impact discrimination in Fair Housing Act cases set forth by the Supreme Court in *Inclusive Communities*.  84 Fed. Reg 160 p. 42854 at 42857 (August 19, 2019).[7] HUD's preamble explanation of the 2019 final rule explains that "claims relying on statistical disparities must articulate how the statistical analysis used supports a claim of disparate impact by providing an appropriate comparison which shows that the policy is the actual cause of the disparity."  84 Fed. Reg. at 42858.  Without that showing, a plaintiff has not alleged the prima facie element of a "robust causal link" between the policy and the claimed disparate impact required by the *Inclusive Communities* decision.

Further, HUD's preamble to the final rule also notes that a disparate impact plaintiff must "allege that the challenged policy or practice has an adverse effect *on members of a protected class*."  84 Fed. Reg. 42858.  HUD states that "it would be insufficient to allege only that the

---

[7] The entire preamble and the final rule itself can be found here.

plaintiff is a member of a protected class and would be adversely affected or that members of a protected class are impacted as are all individuals." *Id.* This latter insufficient allegation is the interpretation of the Complaint most favorable to Plaintiff. Even with the presumption of factual truth, the Complaint cannot be saved from its fatal defect of failure to state a claim upon which relief can be granted as a matter of law.

As Plaintiff has failed to meet his burden of establishment of even a prima facie case of disparate impact discrimination under the Fair Housing Act, Defendant's motion must be granted and Plaintiff's Complaint dismissed in full.

## V. Conclusion

The defects in the Complaint as described above prevent Plaintiff from stating a claim for relief under the sole count: violation of the Fair Housing Act. Plaintiff has alleged no facts under which any reasonable finder of fact could plausibly conclude that the motivation for the information conveyed in Plaintiff's encounter with Defendant's agent was motivated by anything other than Plaintiff's own criminal history. Likewise, the Complaint does not set forth the necessary factual foundation regarding the existence of a challenged "policy", any statistical racial disparity in acceptance of housing applications, or any "robust causation" linking the two. Essentially, Plaintiff's Complaint alleges only that he was told on one occasion that his housing application would be denied because of his felony conviction. That sole allegation of fact is utterly insufficient to support Plaintiff's claim of unlawful discrimination under the Fair Housing Act for either a disparate treatment or disparate impact theory. Since the Complaint does not state even a prima facie case of unlawful housing discrimination, it must be dismissed in its entirety. Defendant respectfully requests this Court grant its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted this 24th day of February 2020.

      *s/ Ryan R. McCain*
Ryan R. McCain, Esq.
Fla Bar ID #28117
RMcCain@barfieldpa.com
Barfield, McCain P.A.
4241 Northlake Blvd., Suite B
Palm Beach Gardens, FL  33410
(561) 650-8139

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the CM/ECF on February 24, 2020 on all counsel or parties of record on the Service List below.

BY: *s/ Ryan R. McCain*

Ryan R. McCain, Esq.

## SERVICE LIST

**JIBRAEL S. HINDI, ESQ.**
Email: jibrael@jibraellaw.com
**THOMAS J. PATTI, ESQ.**
Email: tom@jibraellaw.com

The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, FL 33301
Phone: 954-907-1136
Fax: 855-529-9540
Attorneys for Plaintiff, Ryan Turizo